**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                                   Case No. 6:14-cR-192-Orl-37KRS

NATHANIEL LUCKETT

_____

**ORDER**

This cause is before the Court on the following:

1. Defendant's Motion to Suppress and Request for an Evidentiary Hearing (Doc. 23), filed December 11, 2014; and

2. Government's Opposition to Defendant's Motion to Suppress (Doc. 26), filed December 16, 2014.

**BACKGROUND**

Defendant Nathanial Luckett is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). (Doc. 1.) There is no question that Defendant possessed a firearm because officers of the Orlando Police Department seized a .22 caliber revolver from the interior pocket of pants worn by Defendant in the early evening of April 21, 2014. (Docs. 23, 26-1.) Defendant contends that the firearm and his incriminating statements to officers after his arrest are inadmissible because: (1) the officers seized the firearm after detaining the Defendant without reasonable suspicion, probable cause, or a warrant; and (2) Defendant's statement concerning the firearm occurred during a custodial interrogation that was not

preceded by *Miranda* warnings. (Doc. 23, p. 7 (arguing that Defendant's post-*Miranda* warning statements are "fruits" of his unlawful arrest).)

Defendant filed a Motion to Suppress and requested an evidentiary hearing on his Motion. (Docs. 23, 25.) Defendant further advised that if the Court denies the Motion, then he will seek a "conditional plea of guilty" or a non-jury trial for the "purpose of preserving his appellate rights on the suppression issue." (Doc. 25.) The Government responded to the Motion (Doc. 26), and the Court held an evidentiary hearing on January 12, 2015. (Doc. 29.)

At the hearing, the Government presented the testimony of law enforcement officer Tyler Olson and an audiovisual recording that captured the events from the time prior to the law enforcement officers' observation of Defendant through their eventual arrest of him. (*See id.*; *see also* Doc. 26, p. 3.) The Court also admitted an exhibit offered by Defendant—a report from Orlando Police Department Officer Peter DiCenso. At the conclusion of the hearing, the Court denied the Motion. (Doc. 29.) This Order further memorializes the reasons for the Court's ruling.

## STANDARDS

**I.   Fourth Amendment**

The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend IV. A warrantless arrest is not unreasonable if it is supported by probable cause, and a warrantless search is not unreasonable if it is incident to a lawful arrest. *See Beck v. Ohio*, 379 U.S. 89, 90 (1964). Further, the Fourth Amendment does not preclude law enforcement officers from conducting "brief, investigatory stop[s]" if supported by "reasonable, articulable suspicion that criminal

activity is afoot." *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003) (quoting *Illinois v. Wardlow*, 528 U.S. 119 (2000)). Finally, even absent reasonable suspicion, an officer may address "questions to anyone on the streets.'" *Id.* (quoting Justice White's concurring opinion in *Terry v. Ohio*, 392 U.S. 1 (1968)).

## II.     Fifth Amendment

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To vindicate this Fifth Amendment right, law enforcement officers are required to provide *Miranda* warnings to suspects before they may conduct a "custodial interrogation." *See United States v. Freeman*, No. 14-11302, 2014 WL 6845355, at *6 (11th Cir. Dec. 5, 2014). "Statements obtained in violation of *Miranda* are not admissible to prove the government's case at trial." *United States v. Schulz*, 486 F. App'x 838, 839 (11th Cir. 2012) (citing *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966)).

A person is in custody "when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Schulz*, 486 F. App'x 838, 840 (11th Cir. 2012) (citing *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006)). The court should find a defendant is in custody if, based on the totality of the circumstances, "a reasonable person in the defendant's position would understand his freedom of action to be curtailed to a degree associated with a formal arrest." *See id.* An "interrogation" is "'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Freeman*, 2014 WL 6845355, at *6 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Questions that

are necessary to protect officers or the general public are permitted under the "public-safety exception." *See id.*

### III.     Inevitable Discovery Doctrine

The Government may avoid exclusion of unlawfully obtained evidence by showing by a preponderance of the evidence that the evidence "'inevitably would have been discovered by lawful means.'" *See Freeman*, 2014 WL 6845355, at *6 (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The Government meets its burden by establishing "a reasonable probability the evidence would have been discovered by lawful means that were being pursued actively before the illegal conduct occurred." *Id.* (citing *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004)).

## DISCUSSION

At approximately 4:36 p.m. on April 21, 2014, Defendant was standing with three other black males in a public common area of the Windsor Cove Apartments in Orlando, Florida. (Doc. 23, pp. 1–2.) A taxi van approached the men, and five uniformed law enforcement officers "quickly exited the vehicle and approached the group." (*Id.* at 2; *see* Doc. 26-1, p. 2 (identifying officers).) Defendant then "began to run through the complex," and the uniformed officers pursued him, fired a taser gun at him, and repeatedly ordered him to stop running. (Doc. 23, pp. 1–2, 6; Doc. 26-1.) The officers tackled Defendant in a watery canal, subdued him with physical force, handcuffed him, and removed him from the canal. (*Id.*) A marked police car approached, and the law enforcement officers asked Defendant questions as they searched him by the police car. During the search, Defendant stated that he had a gun, which the officers located in the pocket of a pair of red athletic shorts that Defendant had on under his jeans. (Doc. 26-1.)

The officers also found a plastic bag containing .5 grams of cannabis in the front left pocket of Defendant's jeans. (*Id.*) The officers seized the gun and cannabis and then transported Defendant to jail where they read him his *Miranda* warnings. (*Id.* at 2–3.)

Officer Olson testified that just before Defendant's arrest, Officer Olson and the other four officers were on proactive patrol due to high drug and criminal activity in the area. (*See* Docs. 26-1, 29.) The officers exited the vehicle with the intent to "conduct a consensual encounter" with the group of men, but that changed to an intent to "conduct a drug investigation" when the officers smelled cannabis "emanating from the group." (*See* Docs. 26-1, 29.) Upon exiting their vehicle, the officers had their hands "in a neutral position," and they initially did not give any verbal commands until Defendant fled. (*See* Docs. 26-1, 29.) Officer Olson testified that when the officers tackled and handcuffed Defendant, he believed that probable cause existed to arrest Defendant. (*See* Doc. 29.)

The Government argues that controlling precedent—*Wardlow* and *Franklin*—establish that the officers' pursuit, detention, and search of Defendant was not constitutionally infirm. (Doc. 26, pp. 3–4, 6–7.) The *Wardlow* and *Franklin* Courts held that flight from approaching officers in a high crime area are facts "sufficient to establish reasonable suspicion" so long as the flight was not *improperly provoked* by the officers. *See Wardlow*, 528 U.S. at 124–25; *Franklin*, 323 F.3d at 1301–02. The case law concerning improper provocation is not well-developed; however, the *Franklin* court indicated that improper provocation is conduct that would cause a reasonable and innocent person to flee. *See Franklin*, 323 F.3d at 1302–03.

Although Defendant concedes that *Wardlow* and *Franklin* are difficult cases for him to overcome, he contends that the cases are distinguishable because: (1) there is

5

insufficient evidence that Windsor Cove Apartments is "a high crime area," (2) the officers used excessive force during their chase and seizure of Defendant—including taser deployment; and (3) Defendant's flight from the officers was "totally provoked" by the officers' actions. (*See* Doc. 23, pp. 4–5.) Defendant further argues that the purported cannabis smell "was a pretextual justification for the officers to detain any person who ran from the officers' sudden show of force." (*Id.*) Finally, Defendant argues that his statement "I have a gun," must be suppressed pursuant to *Miranda* because it was made during a "custodial interrogation." (*Id.* at 7–8 (citing *New York v. Quarles*, 467 U.S. 649, 655 (1984)).)

Upon consideration of Officer Olson's testimony, the audiovisual recording, and the remaining evidence, the Court finds that Defendant's flight from the officers was not improperly provoked by the officers' actions. Rather, Defendant's flight was unprovoked and was sufficient to warrant the officers' pursuit and seizure of Defendant. Indeed, given the residential nature of the area and the presence of many bystanders—including children—the officers had little choice but to pursue the Defendant to determine if he presented a risk to the public. *See Wardlow*, 528 U.S. at 124–25; *Franklin*, 323 F.3d at 1301–02. Further, the Court agrees with the Government that the officers "inevitably would have" discovered the firearm pursuant to the lawful search they conducted while questioning the Defendant. (*See id.* at 11.) Thus, the Court finds no basis to exclude the evidence obtained by the law enforcement officers during and after their arrest of Defendant on April 21, 2014.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Suppress (Doc. 23) is **DENIED**.

2. On or before **January 16, 2015**, the Government **SHALL** notify the Court whether it will accept a conditional plea of guilty or, alternatively, agree to a bench trial.

3. If the Government declines to accept the conditional plea or agree to a bench trial then the matter will proceed to jury trial **January 21, 2015**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 13, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record